**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000415
28-JUN-2013
08:12 AM**

NO. CAAP-12-0000415


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellant, v.
CLIFFORD C. DAVIDSEN, Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 11-1-0602(1))


MEMORANDUM OPINION
(By:  Nakamura, C.J., Fujise and Leonard, JJ.)


The State of Hawai'i (State) appeals from the March 29, 2012 Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Evidence (Order) entered by the Circuit Court of the Second Circuit (Circuit Court).[1]

The State argues that it was error to conclude Defendant-Appellee Clifford C. Davidsen (Davidsen) "retained an expectation of privacy" in an area into which Davidsen invited the general public and maintains that Davidsen's consent was not vitiated by the use of a ruse by the police.

---

[1]  The Honorable Rhonda I.L. Loo presided.

I.

The facts in this case are not in dispute. On September 7, 2011, James Howlett (Howlett) discovered that his storage unit had been broken into and that several items belonging to him and paintings belonging to Caro Walker (Walker) had been stolen. The losses were reported to the police and Howlett located multiple advertisements in the Maui Bulletin offering items for sale similar in description to those stolen. All of these ads included the same contact phone number. Based on this information, Walker's boyfriend met with the seller and observed what appeared to be some of Howlett's stolen items. Walker subsequently met with the seller, whom she identified as Davidsen, and while she was unable to identify any of the artwork that was present as hers, Davidsen's description of another painting that he was selling did match one of Walker's stolen paintings.

Detective Ericlee Correa (Det. Correa) was assigned to the case on September 27, 2011, and Walker advised him that she knew where her paintings could be and wanted him to accompany her to retrieve them. Walker initiated a plan to go to Davidsen's residence on September 28, 2011, and to have Det. Correa pose as her boyfriend. Howlett and his wife and another detective joined Walker and Det. Correa, but agreed to wait outside the Davidsen residence until given a signal to enter. No search warrant was obtained before the visit. Walker called ahead to make sure Davidsen would be home and indicated to Davidsen that she wanted to stop by with her boyfriend. When they approached Davidsen's residence, Walker called to inform him that they were there. Det. Correa was dressed casually, with nothing to identify him as a police detective. The front door to the residence was already open, and Davidsen, who was talking on his phone, waved Walker and Det. Correa inside.

2

Before entering the house, Det. Correa identified one of the stolen paintings. When Davidsen finished his call, Det. Correa advised Davidsen that he was a police detective and that several of the paintings that were offered for sale had been reported stolen. Davidsen stated that he had come into possession of the paintings at a garage sale and on Det. Correa's request, granted Walker and the Howletts permission to look around the house for their stolen property. Walker and the Howletts recovered several of their stolen items.

When recovering some of his property, Howlett discovered bolt cutters and a crowbar he suspected were used to break into his storage container. Det. Correa thereafter advised Davidsen that he was a suspect and informed him that he would be questioned at a later date. Det. Correa did not personally instruct or direct the search of the residence and did not participate in the search. A warrant for a subsequent search was later obtained.

On November 8, 2011, the State filed a complaint against Davidsen for the following eleven crimes: (1) Theft of Credit Card in violation of Hawaii Revised Statutes (HRS) § 708-8102 (1993); (2) Identity Theft in the Third Degree in violation of HRS § 708-839.8 (Supp. 2012); (3) Fraudulent Use of a Credit Card in violation of HRS § 708-8100 (1993 and Supp. 2012); (4) Theft in the Fourth Degree in violation of HRS § 708-833 (1993); (5) Theft of a Credit Card in violation of HRS § 708-8102; (6) Identity Theft in the Third Degree in violation of HRS § 708-839.8; (7) Fraudulent Use of a Credit Card in violation of HRS § 708-8100; (8) Theft in the Third Degree in violation of HRS § 708-832 (Supp. 2012); (9) Theft in the Second Degree in violation of HRS § 708-831 (Supp. 2012); (10) Theft in the Second Degree in violation of HRS § 708-831; and (11) Theft in the Second Degree in violation of HRS § 708-831.

3

On December 14, 2011, Davidsen moved to suppress evidence and on March 29, 2012, the Circuit Court entered the Order granting Davidsen's motion. This timely appeal followed.

## II.

On appeal, the State challenges the Circuit Court's conclusions of law 14, 15 and 16, that state,

> 14. In the instant case, there was deception on the part of Det. Correa which induced consent for him to enter an area that the Defendant had a reasonable expectation of privacy;

> 15. Though Walker had made up the story that she would be accompanied by her boyfriend, Det. Correa's entry into Defendant's residence was based on a material misrepresentation that eroded the consensual quality of his entry;

> 16. This Court concludes that the evidence obtained from Defendant's home is suppressed;

The State argues that Davidsen "did not retain a reasonable expectation of privacy in [an] area of his home where [Davidsen] invited members of the general public to conduct business transactions."

Like the Fourth Amendment to the United States Constitution, article I, section 7 of the Hawaii State Constitution protects people from unreasonable government intrusions into areas in which they have a legitimate expectation of privacy. State v. Bonnell, 75 Haw. 124, 136, 856 P.2d 1265, 1272 (1993). Hawaiʻi courts utilize a two-part test to determine whether the expectation of privacy is legitimate. "First, one must exhibit an actual, subjective expectation of privacy. Second, that expectation must be one that society would recognize as objectively reasonable." Bonnell at 139, 856 P.2d at 1273-74 (quoting State v. Biggar, 68 Haw. 404, 407, 716 P.2d 493, 495 (1986)) (internal quotation marks omitted).

The United States Supreme Court has held that "the home is accorded the full range of Fourth Amendment protections." Lewis v. U.S., 385 U.S. 206, 211 (1966). However, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. U.S., 389 U.S. 347, 351 (1967).

The State argues that because Davidsen invited parties interested in the items listed for sale into his home, he gave up his expectation of privacy. It has long been established that when "the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." Lewis, 385 U.S. at 211. By inviting potential buyers of the stolen items advertised in the Maui Bulletin to come to his house, Davidsen clearly converted at least those portions of his home in which he conducted his sales into a commercial center, thereby no longer maintaining an actual expectation of privacy in those areas.

Although not clear from the Order, based on the findings of fact made by the Circuit Court, it appears that the deception referenced in its conclusion of law 14 was Walker's communication with Davidsen over the phone that she wanted to come up to his house with her boyfriend and that deception vitiated Davidsen's consent to Walker and Det. Correa's entry into his home.[2] However, the Circuit Court expressed no reason why such a deception would affect the voluntary nature of the invitation Davidsen had already advertised to the public or to Walker when she first visited his home by herself and we can

_____

[2] The State concedes that "Det. Correa's involvement in the matter was sufficient to constitute 'government action'."

5

think of none.[3]  Nevertheless, issuing a voluntary invitation to the public to engage in commerce in one's home does not mean one relinquishes an actual expectation of privacy in all parts of one's home.  Det. Correa asked Davidsen for permission for Walker and the Howletts to "look around" for their stolen property.  In doing so, Walker inspected bedrooms and went downstairs in search of her stolen paintings.  "A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant."  Lewis, 385 U.S. at 211.  However, "this does not mean that, whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search for incriminating materials."  Id.

When Det. Correa asked Davidsen for permission to search for stolen items, he had already disclosed to Davidsen that he was a police officer.  Thus, whatever influence the ruse

---

[3]      In any event, a ruse does not automatically invalidate consent to enter a dwelling.  "[I]n the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents."  Lewis, 385 U.S. at 209.  In Lewis, an undercover federal narcotics officer solicited the purchase of marijuana from the petitioner, who directed the officer to his home and invited him inside to complete the transaction.  Id. at 207.  In affirming the conviction, the Supreme Court held that "[t]he pretense resulted in no breach of privacy; it merely encouraged the suspect to say things which he was willing and anxious to say to anyone who would be interested in purchasing [marijuana]."  Id. at 212.

In State v. Roy, the Hawai'i Supreme Court held that "[w]e do not believe, however, that our constitutional drafters intended to protect criminal defendants from warrantless secret agents."  54 Haw. 513, 517, 510 P.2d 1066, 1068 (1973).  The supreme court quoted with approval the following passage from Lewis:

> [w]ere we to hold the deceptions of the agent in this case
> constitutionally prohibited, we would come near to a rule
> that the use of undercover agents in any manner is virtually
> unconstitutional per se.  Such a rule would, for example,
> severely hamper the Government in ferreting out those
> organized criminal activities that are characterized by
> covert dealings with victims who either cannot or do not
> protest.  A prime example is provided by the narcotics
> traffic.

Id. at 517-518, 510 P.2d at 1069 (quoting Lewis, 385 U.S. at 210).

employed by Walker and Det. Correa might have had on Davidsen's decision to allow the individuals onto his property, it does not appear that Det. Correa's disclosure affected Davidsen's decision to consent to the search of his house. This is supported by the evidence that Davidsen had an explanation for the presence of stolen property in his home. The Circuit Court did not analyze the effect of Det. Correa's disclosure on Davidsen's subsequent consent to search the rest of his home and erred in suppressing all evidence solely based on the ruse.

### III.

For the foregoing reasons, the March 29, 2012 Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Evidence is vacated and the case is remanded for further proceedings.

DATED: Honolulu, Hawai'i, June 28, 2013.

On the briefs:

Peter A. Hanano,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellant.

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

7